FILED
DEC 28 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| HOOPA VALLEY TRIBE, | ) | Case No. 06-908 L |
| Plaintiff; | ) | |
| v. | ) | |
| THE UNITED STATES OF AMERICA, | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, by and through the undersigned attorney, brings the following Complaint against the United States of America and alleges as follows:

## NATURE OF ACTION

1. This is an action by Plaintiff, the Hoopa Valley Tribe in California (herein "Plaintiff," the "Hoopa Valley Tribe," or the "Tribe"), seeking money damages and an accounting against Defendant United States of America (herein "Defendant," or the "United States") for breaches of fiduciary trust duties in regard to management by Defendant of the trust funds and other assets of the Hoopa Valley Tribe from August 21, 1864 to present. This action arises out of Defendant's violation of statutory, regulatory, and common law trust duties owed to the Tribe.

## PARTIES

2. Plaintiff is a sovereign and federally recognized Indian Tribe, possessing all legal rights and responsibilities afforded to federally recognized Indian tribes. Plaintiff is organized under a Constitution and Bylaws ratified by Congress in the Act of October 31, 1988,



ORIGINAL

Pub. Law 100-580. Plaintiff is eligible for the special programs and services provided by the United States to federally recognized Indian tribes.

3. Defendant United States, as a matter of constitutional, statutory, regulatory, and federal common law, is trustee and a fiduciary to the Tribe and is charged with carrying out trust duties and responsibilities with regard to the management and administration of the Tribe's trust funds and other trust assets.

**JURISDICTION**

4. This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1505 (the Indian Tucker Act) and 1491 (the Tucker Act), as this action involves a claim against the United States for money damages brought by an Indian tribe arising under the Constitution, laws, treaties, or regulations of the United States, or Executive Orders of the President, including, but not limited to:

a. The Act of December 22, 1987, Pub. L. No. 100-202 and the Act of September 27, 1988, Pub. L. No. 100-446, which require the Bureau of Indian Affairs (the "BIA") to audit and reconcile tribal trust funds, and to provide tribes with an accounting of such funds;

b. The Act of October 23, 1989, Pub. L. No. 101-121, the Act of November 5, 1990, Pub L. No. 101-512, and the Act of November 13, 1991, Pub. L. No. 102-154, all of which require the BIA to audit, reconcile, and certify through an independent party the results of the reconciliation of tribal trust funds as the most complete reconciliation of such funds possible, and to provide tribes with an accounting of such funds;

c. The Act of October 25, 1994 (The American Indian Trust Fund Management Reform Act of 1994), Pub. L. No. 103-412, codified at 25 U.S.C. §§ 161a, 162a,

and 4001-4061 (1997), which imposes various accounting, auditing, fund management, reconciliation and reporting obligations on the United States;

d. Other statutes that describe specifically and generally the United States' duties as a fiduciary and a trustee in managing Plaintiff's trust funds, including, but not limited to: 25 U.S.C. §§ 111-148 (Disbursements of Moneys and Supplies); 25 U.S.C. §§ 151-166 (Deposit, Care, and Investment of Indian Moneys), and selected statutes of Title 31 of the United States Code;

e. Other statutes that describe specifically and generally the United States' duties in managing Plaintiff's timber and other assets, including 25 U.S.C. §§ 407, 466, and 3101-3120, and other selected statutes of Title 25 of the United States Code;

f. The Hoopa-Yurok Settlement Act, Pub. Law 100-580, codified in part at 25 U.S.C. § 1300i, *et seq.*;

g. The Interior Department Appropriations Act of 1990, Pub. L. No. 101-512, 104 Stat. 1915, and each Interior Department Appropriations Act annually thereafter, including the Act of August 2, 2005, Pub. L. No. 109-54, 119 Stat. 519, providing that "the statute of limitations shall not commence to run on any claim concerning losses to or mismanagement of trust funds until the affected tribe or individual Indian has been furnished with an accounting of such funds from which the beneficiary can determine whether there has been a loss;"

h. The Act of March 19, 2002, Pub. L. 107-153, 116 Stat. 79, as amended by the Act of December 30, 2005, Pub. L. 109-158, 119 Stat. 2954, providing that "Notwithstanding any other provision of law, for purposes of determining the date on which an Indian tribe received a reconciliation report for purposes of applying any statute of limitations, any such

report provided to or received by an Indian tribe in response to section 304 of the American Indian Trust Management Reform Act of 1994 shall be deemed to have been received by the Indian tribe on December 31, 2000;"

i. Regulations that describe the United States' duties in managing Plaintiff's trust funds including: 25 C.F.R. Chap. I, Bureau of Indian Affairs, Department of the Interior, Subchapter G—Financial Activities, and selected United States Treasury regulations;

j. Regulations that describe the United States' duties in managing Plaintiff's timber and other resources, including those found in 25 C.F.R. Part 163;

k. Written policies and manuals published by various United States Departments and Agencies that describe the United States' duties in managing Plaintiff's trust funds, timber, and other assets; and

l. Executive Order of Ulysses S. Grant, dated June 23, 1876, delineating the Hoopa Valley Indian Reservation, *2 Executive Orders relating to Indian Reservations 38*, under the authority granted by Congress in the Act of April 8, 1864, 13 Stat. 39; and

5. This court also has jurisdiction over the subject matter of this action under federal common law describing and defining the fiduciary relationship between the United States and Plaintiff, created by the statutes, orders, and regulations listed above.

**<u>ALLEGATIONS COMMON TO ALL CLAIMS FOR RELIEF</u>**

6. The Hoopa Valley Tribe occupies the Hoopa Valley Indian Reservation (the "Reservation"), located in Northwestern California, and is the beneficial owner of land and natural resources, including valuable timber and forestlands, within the Reservation, title to which is held in trust by the United States for the benefit of the Tribe.

7. Lands held in trust by the United States for the benefit of an Indian tribe are inalienable except as authorized by Congress. Congress has granted the Secretary of Interior authority to approve conveyances of interests in trust land, such as leases, easements, and rights of way. The Secretary of Interior exercises comprehensive regulatory control over the management of lands and resources held in trust for Indian tribes, including those lands and resources held in trust for the Hoopa Valley Tribe.

8. The Secretary of the Interior has been charged by Congress with the duty to collect income derived from the Tribe's trust assets and to deposit such income in the United States Treasury and other depository institutions for the benefit of the Tribe.

9. Congress has further directed that interest be paid on the Tribe's funds held in trust and required that such trust funds be invested. Pursuant to the duties and authority delegated by Congress, the Secretary of Interior exercises comprehensive control over the Tribe's trust funds.

10. Defendant has during the time period encompassed by this action exercised comprehensive statutory and regulatory control over the management of the Tribe's monetary trust assets. Defendant has controlled, conducted, and managed the collection, deposit, investment, and disbursement of the income derived from the Tribe's trust assets, including, but not limited to, funds derived from timber sales, leases, and other contracts.

11. Under longstanding constitutional, statutory, and federal common law, and based upon the historic relationship between the United States and Indian tribes, the United States assumed the obligations and duties of a trustee by establishing and maintaining comprehensive regulatory control of funds derived from tribal trust lands and resources. The United States owes

a trust duty to the Tribe with regard to the Tribe's trust funds and other trust assets. In the exercise of that trust duty, the United States is held to the most exacting fiduciary standards.

12. With respect to Indian tribal trust funds, the Defendant's trust and fiduciary duties include, but are not limited to, those pertaining to the prudent investment of trust funds, such as:

a. Duty to make the tribal trust funds productive by investing tribal trust funds and maximizing, in a manner consistent with the statutory restrictions, the return on the investment of all tribal trust funds;

b. Duty to invest all tribal trust funds in public debt securities with maturities suitable to the needs of the funds involved and bearing interest at rates taking into consideration current market yields on outstanding marketable obligations of the United States of comparable maturities;

c. Duty to manage tribal trust funds as a prudent investor in a manner consistent with statutory restrictions and exercising reasonable care and skill;

d. Duty to provide adequate controls over receipts and disbursements of tribal trust funds; and

e. Duty to establish consistent, written policies and procedures for tribal trust fund management and accounting.

13. The Defendant's trust and fiduciary duties also include, but are not limited to, the following:

a. Duty to enforce agreements for the sale, lease, use, or other disposition of the Tribe's natural resources, including to collect all proceeds due Indians under those agreements;

b. Duty to deposit timely in the Tribe's trust accounts all funds collected for sale and use of the Tribe's natural resources;

c. Duty to properly credit and record all transactions relating to the Tribe's trust funds and the Tribe's assets;

d. Duty to properly and completely account for all tribal trust funds;

e. Duty to provide adequate systems for accounting for and reporting tribal trust fund balances;

f. Duty to provide periodic, timely reconciliations to assure the accuracy of tribal trust accounts;

g. Duty to determine accurate cash balances for tribal trust funds;

h. Duty to prepare and supply account holders with periodic statements of their account performance with balances of their account which shall be available on a daily basis;

i. Duty to provide adequate staffing, supervision, and training for tribal trust fund management and accounting;

j. Duty to cause an annual audit to be performed of all tribal trust funds;

k. Duty to reconcile all tribal trust accounts to ensure that account holders receive a fair and accurate accounting of all trust funds;

l. Duty to properly maintain adequate records of tribal trust funds and assets; and

m. Duty to maintain confidentiality of information pertaining to Indian trust funds and assets.

14. The United States has failed to perform a full, complete, and accurate accounting and reconciliation of the Tribe's trust fund accounts as required by federal law, depriving the Tribe of necessary information regarding its trust funds and accounts.

15. In 1996, the BIA provided the Tribe with a report of limited and incomplete scope prepared by Arthur Andersen LLC entitled "Agreed-Upon Procedures and Findings Report for Hoopa Valley Tribe, July 1, 1972 Through September 30, 1992" (herein "the Arthur Andersen Report").

16. The Arthur Andersen Report failed to analyze and report on some of the Hoopa Valley Tribe's substantial trust accounts, including but not limited to the "Reservation-Wide Account, No. 7256," and the "Hoopa-Yurok Settlement Fund, No. 7193." The Arthur Andersen report also did not analyze or report on the United States' management of the Tribe's trust funds and accounts from the period August 21, 1864 through July 1, 1972, nor from September 30, 1992 to the present day.

17. By its own terms, the Arthur Andersen Report does not constitute an audit made in accordance with generally accepted auditing standards. The Arthur Andersen Report stated that "had we performed additional procedures or had we made an audit of the financial statements of the Trust Funds managed by the Bureau in accordance with generally accepted auditing standards, other matters might have come to our attention that would have been reported to you." Arthur Andersen Report, at p. 4.

18. Despite the limitations of the Arthur Andersen Report, and its incomplete nature, the Arthur Andersen Report discloses significant evidence of mismanagement of the Tribe's trust funds by the United States.

19. The United States has breached its fiduciary and statutory duties owed to the Tribe by mismanaging the Tribe's land, natural resources, and the income and funds derived therefrom. The mismanagement goes far beyond that reported in the Arthur Andersen Report. The full extent of the damages resulting from the mismanagement shall be proven at trial.

20. As a result of the Defendant's mismanagement, the Tribe has lost funds, royalties, interest income, profits, and proceeds which would have been earned, collected, and invested for the benefit of the Tribe, if the United States had sufficiently performed its fiduciary administration and management duties.

21. Pursuant to Section 4 of the Hoopa-Yurok Settlement Act, 25 U.S.C. § 1300i-3, the Hoopa Valley Tribe received a portion of the Hoopa-Yurok Settlement Fund in 1991. Disposition of the remainder of the Settlement Fund is a matter currently pending before Congress. *See* S. Hrg. 107-648, *Oversight Hearing on the Department of the Interior Secretary's Report on the Hoopa-Yurok Settlement Act*, U.S. Senate Committee on Indian Affairs, August 1, 2002. This suit does not address the future disposition of the existing Settlement Fund remainder.

**FIRST CLAIM FOR RELIEF**

**(Breach of Fiduciary Trust Duty – Mismanagement of Trust Assets)**

22. From August 21, 1864 to the present day, the United States has violated its trust duty to Plaintiff with regard to its management of the Tribe's trust funds (which include all monetary trust assets, accounts, income, and interest, funds held on deposit, invested funds, and any other Tribal-related monetary funds accounts established pursuant to federal law that are maintained, managed, invested, or controlled by either the Department of Interior or Treasury; any proceeds-of-labor accounts, Indian monies proceeds-of-labor accounts, special deposit

accounts, or Treasury accounts (principal and interest) held for the benefit of the Tribe; legislative settlement or award accounts; or judgment accounts; and all other funds of any kind held, controlled, or invested by the United States, or its agencies, in trust for the Tribe), and with regard to its management of the Tribe's non-monetary trust resources and assets, including, but not limited to, the Tribe's forestlands and timber resources, in one or more of the following ways:

a. By failing to credit the Tribe's trust fund accounts for the total amount of income derived from the sale or lease of land, timber, or other resources held in trust for the Tribe, or otherwise derived from the management of such resources under Defendant's management and control;

b. By failing to credit the Tribe's trust fund accounts for amounts paid to it or due to it from other sources;

c. By failing to properly record all transactions pertaining to the Tribe's trust fund accounts;

d. By failing to implement effective cash management practices;

e. By failing to deposit the Tribe's trust funds in interest bearing accounts;

f. By failing to deposit the Tribe's trust funds in interest bearing accounts in a timely manner;

g. By holding the Tribe's trust funds in the United States Treasury at inadequate interest rates;

h. By holding the Tribe's trust funds in various investments paying inadequate interest rates;

i. By utilizing and expending the Tribe's trust funds for purposes not for the exclusive benefit of the Tribe;

j. By otherwise failing to invest and manage the Tribe's trust funds as a prudent trustee to earn the maximum income for the Tribe;

k. By applying the Tribe's trust funds in a manner not authorized by law;

l. By failing to derive the maximum income for the sale or lease of the Tribe's non-monetary trust assets, including, but not limited to, the Tribe's forestlands and timber resources;

m. By failing to collect, deposit, and invest funds due and owing to the Tribe for the sale or lease of its non-monetary trust assets, or otherwise derived from the management of its non-monetary trust assets;

n. By failing to timely collect, deposit, and invest funds due and owing to the Tribe for the sale or lease of its non-monetary trust assets, or otherwise derived from the management of the Tribe's non-monetary trust assets;

o. By maintaining and operating a tribal trust fund system that is inadequate to properly and effectively manage tribal trust funds, and utilizing this system to manage the Tribe's trust funds;

p. By failing to maintain adequate systems and controls in the tribal trust fund system to guard against error and dishonesty;

q. By failing to maintain adequate records with regard to tribal trust funds, and failing to properly store tribal trust account documents so that an effective audit and reconciliation can be performed; and

r. By failing to perform regular and accurate accountings of tribal trust funds and assets for the trust beneficiary, the Hoopa Valley Tribe, as required by law.

23. Defendant's mismanagement of the Tribe's trust funds, resources, and assets breaches fiduciary trust duties that arise out of statutes, regulations, executive orders, and federal common law described above.

24. As a result of the Defendant United States' breaches of its fiduciary trust duties with regard to the Tribe's trust funds, and assets throughout the relevant time periods, Plaintiff has been damaged and seeks compensatory damages against Defendant, interest, costs, attorneys' fees, and all other and further relief as this Court deems just and proper.

**SECOND CLAIM FOR RELIEF**

**(Full and Complete Accounting and Document Preservation)**

25. Because the United States has failed to provide the Tribe with an accounting consistent with federal law or the requirements of generally accepted accounting principles and auditing standards, the Plaintiff is entitled to an order of this Court compelling an accounting to aid the Court in a final determination of damages that Plaintiff is entitled to.

26. Ancillary to this demand for an accounting, Plaintiff is entitled to an order from this Court directing the United States to preserve all records relating to Plaintiff's trust funds, accounts, and assets.

27. Under applicable federal trust law principles between the United States as trustee and the Hoopa Valley Tribe as Indian tribal beneficiary, in addition to the federal statutes that require the United States to perform an audit, reconciliation, and certification, Plaintiff is entitled to all information about its trust funds, accounts, and assets in the possession of the United States. This includes all relevant information about the terms of the trust, its present status, past

acts of management or other incidents of the administration of the trust, including investments, which information is in the custody, possession, or control of the United States or its agents. The United States is obligated to provide the Tribe with this information, and Plaintiff requests that this Court enter an appropriate Order requiring the United States to provide Plaintiff with this information.

WHEREFORE, Plaintiff Hoopa Valley Tribe requests the Court to award the following relief:

1. To enter judgment in favor of the Plaintiff Hoopa Valley Tribe and against the Defendant United States of America for compensatory damages in an amount to be determined at trial;

2. To order Defendant to perform a complete accounting for all trust funds and assets of Plaintiff in Defendant's care, custody, or control from August 21, 1864 to the present;

3. To immediately order Defendant to preserve all records of any kind whatsoever pertaining to Plaintiff's trust funds, resources, and assets during the pendency of this action;

4. To grant Plaintiff prejudgment interest, costs and attorneys fees in this litigation as may be provided by law; and

5. To grant Plaintiff such other and further relief as the Court deems appropriate.

DATED this 27th day of December, 2006

MORISSET, SCHLOSSER, JOZWIAK & McGAW

Thomas P. Schlosser, Attorney of Record
801 Second Avenue, Suite 1115
Seattle, WA 98104-1509
Tel.: (206) 386-5200
Fax: (206) 386-7322
t.schlosser@msaj.com
*Attorneys for Hoopa Valley Tribe*

F:\WPDOCS\0020\09685\HVT Complaint 02.doc
kfn 12/26/06